IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZAOQIANG SHENG HU FUR CO., LTD., et al.,<br><br>Defendants. | Case No. 22-cv-01512<br><br>**Judge Nancy L. Maldonado**<br><br>**Magistrate Judge Heather K. McShain** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Pursuant to this Court's Order [42], Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") submits the following supplemental memorandum in support of Plaintiff's previously filed Motion for Entry of Default and Default Judgment [37] and corresponding Memorandum [38].

**I.  INTRODUCTION**

Plaintiff has created a table compiling information in the record and previously filed as Exhibits 2 and 3 [17], [18] to the Declaration of Lisa Bereda regarding Defaulting Defendants. *See* Exhibit 1 of the Declaration of Justin R. Gaudio ("Gaudio Dec.") at ¶ 2. Because Defaulting Defendants have failed to participate in this case or respond to Plaintiff's discovery requests[1], the full extent of Defaulting Defendants' sales remains unknown. In trademark counterfeiting cases, Congress has provided the remedy of statutory damages for brand owners, explicitly recognizing the difficulty of proving actual damages in cases against counterfeiters. Plaintiff's requested statutory damages awards are appropriate in this case given Defaulting Defendants' egregious

---

[1] Expedited discovery requests were sent to Defendants on September 22, 2022.

counterfeiting and limited information available regarding sales. Plaintiff has grouped Defaulting Defendants into three groups for the amount of statutory damages sought: Group A ($2,000,000), Group B ($1,000,000), and Group C ($250,000). These amounts of statutory damages sought per Defaulting Defendant are appropriate given the information on the record and factors that Courts have considered in these types of cases, including wide exposure over the Internet, deterrence of Defaulting Defendants, and deterrence of similarly situated online sellers. Specifically, for Groups A and B, Defaulting Defendants' revenue information from PayPal, Inc. ("PayPal") indicates significant counterfeit sales.

## II. SUPPLEMENTAL FACTUAL BACKGROUND

As noted above, Plaintiff has grouped Defaulting Defendants into three groups based on available information regarding total revenue. Defaulting Defendants in this case are selling counterfeit Deckers products through independent websites and online marketplace accounts, which affects the type and amount of information available regarding revenue. As such, Deckers provides the below supplemental factual background information on both independent websites and online marketplace accounts to illustrate what information is available regarding Defaulting Defendants' counterfeiting operations.

### A. Independent Websites

Nearly all of the Defaulting Defendants in this case operate numerous independent websites to sell counterfeit products as part of a strategy to lure unsuspecting shoppers and evade enforcement efforts. Independent website operators typically create hundreds or even thousands of both single brand and multi-brand websites that interlink to their network of domain names. Gaudio Dec. at ¶ 4. Single brand websites, like most of the websites in this case, offer only counterfeit products that infringe the trademarks of a single brand (the UGG or HOKA brands in

this case). *Id*. Conversely, multi-brand websites offer counterfeit products that infringe the trademarks of more than one brand. *Id*. Both single brand and multi-brand websites have a purported inventory of many counterfeit products to appear more legitimate. *Id*. at ¶ 5. However, these sham websites typically only sell a few of the most popular products for each brand. *Id*. Some websites will send no product at all and just keep the funds and/or steal their customer's identity to register new websites. *Id*. at ¶ 6. Likewise, most websites are void of any contact information, including email addresses. *Id*.

Unlike marketplaces (see Section B, *infra*), independent website operators set up their own hosting and payment services. *Id*. at ¶ 7. Such services are typically located outside of the United States. *Id*. As such, only Defaulting Defendants have access to information regarding their total sales (*i.e.*, there is no third party from which to obtain the information). When registering domain names for independent websites, Defendants often use multiple fictitious names and addresses. Gaudio Dec. at ¶ 4. Here, the Domain Names are operated by unknown individuals and/or entities and no legitimate information is available regarding Defaulting Defendants' true identities. Indeed, screenshots of websites linked to Domain Names show that each of the websites are devoid of any contact information. The fact that the Domain Names have nothing to do with the content on the websites (*e.g.*, doupcreatives.com, lucynick.com, and melisae.com, *etc*.) is further evidence of their illegitimacy.

Most independent websites process payment using only credit cards. Gaudio Dec. at ¶ 7. In this arrangement, the credit card network (*e.g.,* Visa or MasterCard) simply moves funds from the U.S. buyer's issuing bank to Defaulting Defendants' receiving bank in China. *Id*. Since the receiving bank is in China, Plaintiff is unable to freeze those accounts or obtain any information regarding them with a U.S. court order. *Id*. In this case, several of the Domain Names used or

have been linked to PayPal accounts for payment processing. Unlike credit cards, PayPal does have and has provided limited information regarding the accounts, including the amount restrained and total revenue (see Exhibit 1 to the Gaudio Declaration). However, the PayPal information is limited only to sales paid for with PayPal. As mentioned above, Plaintiff is unable to obtain information for sales using other payment methods such as credit cards. Likewise, Defaulting Defendants have not participated in this case or provided their sales information.

B. **Online Marketplace Accounts**

Other Defaulting Defendants in this case are selling counterfeit Deckers products through online marketplace accounts, particularly through the platforms Alibaba.com, AliExpress.com, and Wish.com. In this arrangement, ecommerce store hosting and payment systems are provided by the marketplace platform. Sellers on these online marketplace platforms have the potential to earn a significant amount of money from selling products. AliExpress, for example, has "more than one hundred million products supplied by more than 200,000 Chinese exporters and manufacturers" and its "top publishers earn over $30,000 a month and continue to earn more month over month.[2]" Similarly, Wish.com has over 44 million active monthly users on its platform and around 900,000 products are sold each day.[3]

Counterfeiters such as Defaulting Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Deckers' enforcement. E-commerce store operators like Defaulting Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction

---

[2] AliExpress Portal, AliExpress, https://portals.aliexpress.com/help/about_us.html.

[3] Wish About Us, Wish, https://www.wish.com/companyinfo?hide_login_modal=true.

of this Court to avoid payment of any monetary judgment awarded to Deckers. Gaudio Dec. at ¶ 8.

When restraining accounts, Plaintiff requests the marketplace platforms to provide the third party discovery authorized by the Temporary Restraining Order, including the names and email addresses for Defaulting Defendants. Typically, the online marketplace platforms do not provide comprehensive sales information because it would be unduly burdensome on them to search all of defendants' listings for potential infringing sales. Gaudio Dec. at ¶ 9. The information the marketplace platforms do provide is limited to the specific counterfeit product listing identified by Plaintiff for each Defaulting Defendant. *Id*. Defaulting Defendants are all willful infringers and unwilling to provide more information regarding their counterfeiting operations.

**C.     Popularity of the DECKERS Brand**

In fiscal year 2022, Plaintiff had a record-breaking year delivering over $3 billion in annual revenue for the first time. *See* Exhibit 2 of Gaudio Dec. at ¶ 10. UGG brand sales accounted for $1.08 billion and HOKA brand sales accounted for $892 million of total portfolio revenue. *Id*. Deckers has taken significant efforts to promote, protect, and enhance the DECKERS Trademarks. In fiscal year 2022, Deckers spent $255 million in advertising, marketing, and promotion expenses. *Id*. Additionally, since 2011, Deckers has filed over 115 lawsuits against over 72,000 online sellers infringing its popular trademarks and/or registered designs. *Id*. at ¶ 3.

**III.    SUPPLEMENTAL ARGUMENT**

Plaintiff has requested an award of statutory damages pursuant to 15 U.S.C. § 1117(c). The Lanham Act allows a plaintiff to elect one of two alternative recovery options: (1) actual damages caused by the infringement, or (2) statutory damages. *See* 15 U.S.C. § 1117. Section 1117(c) provides that a plaintiff may elect to receive between $1,000 and $200,000 per counterfeit mark

per type of goods or services sold, offered for sale, or distributed, and up to $2 million if the violation is willful. 15 U.S.C. § 1117(c)(1)-(2). Congress specifically provided the option of statutory damages because:

> The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters.

Senate Report No. 104-177, S. Rep. 104-177, at *10 (1995). Courts have found that an award of statutory damages are particularly appropriate in default judgment cases because "the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 123 (S.D.N.Y. 2003); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)). The *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.* Court held that "requiring an evidentiary hearing for statutory damages here would defeat the purpose of 15 U.S.C. § 1117(c)(2)." *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. 2008); see also, *Chanel, Inc. v. Wrice*, 2015 U.S. Dist. LEXIS 15337, at *16 (N.D. Ohio 2015) (determining statutory damages without evidentiary hearing, noting that defendants who had defaulted would likely not participate in an evidentiary hearing if it occurred).

As shown in Exhibit 1 to the Gaudio Declaration, Plaintiff has grouped the Defaulting Defendants into three groups based on the requested statutory damages award: "Group A", "Group

B", and "Group C". For the reasons in Section I.A above, and the reasons in Plaintiff's Memorandum in Support of its Motion for Entry of Default and Default Judgment ([38] at pp. 8-12), Plaintiff respectfully requests that this Court enter an award of two million dollars ($2,000,000) per Defaulting Defendant in Group A, one million dollars ($1,000,000) per Defaulting Defendant in Group B, and two hundred fifty thousand dollars ($250,000) per Defaulting Defendant in Group C. These amounts are appropriate given the information this Court does have and factors that courts have considered in these types of cases: (1) Defaulting Defendants' willful infringement; (2) efforts taken by Plaintiff to promote, protect, and enhance the DECKERS Trademarks; (3) wide exposure over the Internet; (4) deterrence of Defaulting Defendants; and (5) deterrence of similarly situated online sellers. *See* previously filed Memorandum [83] at pp 10-12. In addition to these reasons, the requested award is appropriate for the reasons below:

  I. <u>Group A's Requested $2 million Statutory Damages Award Is Appropriate</u>

Group A consists of Defaulting Defendants hortonway.com and isabelw.com. Plaintiff requests the maximum statutory damages award of two million dollars ($2,000,000) for these two Defaulting Defendants. Both of these Domain Names exclusively sell counterfeit HOKA or UGG products. *See* Exhibit 3 of Gaudio Dec at ¶ 11. Additionally, both of the Domain Names completely replicate Plaintiff's websites (ugg.com and hoka.com) in an attempt to deceive consumers looking for genuine UGG or HOKA products. Defaulting Defendant hortonway.com has a total PayPal revenue of $5,106,758.54 and Defaulting Defendant isabelw.com has a total PayPal revenue of $1,701,163.14. *See* Exhibit 1 to Gaudio Dec. at ¶ 2. There is no evidence that any of the revenue was for non-infringing products and Defendants have not appeared to provide any evidence to the contrary. As such, the maximum statutory damages award is warranted due

to these Defaulting Defendants exclusively selling counterfeit Deckers' products, their high revenue numbers, and their egregious conduct in copying Plaintiff's websites.

      II.    Group B's Requested Statutory Damages Are Appropriate in this Case

Group B consists of Defaulting Defendants slowlinebag.com, hokas-shoes.com, snowboot-us.top, ustheugg.online, zebulonb.com, bootsstore.tophokashoeforwomen.com, and uggweb.xyz. *See* Exhibit 4 of Gaudio Dec at ¶ 12. Plaintiff requests the Court's entry of an award one million dollars ($1,000,000) in statutory damages for each of these Defaulting Defendants. The facts here are identical to the Group A Defaulting Defendants, except that their total PayPal revenue ranges from $101,820.17 - $765,233.95. While the Group B Defaulting Defendants' conduct is as egregious and intentional as the Group A Defaulting Defendants, Plaintiff is seeking a lower statutory damages award due to their comparatively smaller revenue figures.

      III.    Group C's Requested Statutory Damages Are Appropriate in this Case

Group C consists of the remaining Defaulting Defendants (both Domain Names and Online Marketplace accounts). Plaintiff is requesting two hundred fifty thousand dollars ($250,000) in statutory damages for each Defaulting Defendant in Group C. For 37 of these Defendants, the total PayPal revenue is available and is under $100,000. *See* Exhibit 1 of the Gaudio Dec. at ¶ 2. No sales information is available for the remaining independent websites[4]. Likewise, Plaintiff is not able to determine the total revenue for the four online marketplace accounts as it was not included in the information provided by the third-party platforms. The lower amount frozen in Defaulting Defendants' accounts only includes funds over a short period of time and there is likely significant money generated from the websites that has been transferred to bank accounts outside

---

[4] Since no funds are frozen and no information is available regarding sales, these Domain Names are not listed on Table 1. However, the website linked to each Domain Name is similar to those in Group A and B in content and purpose.

the jurisdiction of this Court. Although financial documentation is not available, the requested $250,000 statutory damages award is warranted based on other factors, including Defaulting Defendants' willful infringement, efforts taken by Plaintiff to promote, protect, and enhance the DECKERS Trademarks, Defaulting Defendants' wide exposure over the Internet, and deterrence of Defaulting Defendants and similarly situated online sellers.

## CONCLUSION

Accordingly, Deckers respectfully requests that the Court award statutory damages in the amount of two million dollars ($2,000,000) per Defaulting Defendant in Group A, one million dollars ($1,000,000) per Defaulting Defendant in Group B, and two hundred fifty thousand dollars ($250,000) per Defaulting Defendant in Group C pursuant to 15 U.S.C. § 1117(c).

Dated this 2nd day of March 2023.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Marcella D. Slay
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
mslay@gbc.law

*Attorneys for Deckers Outdoor Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of March 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website and I will send an e-mail to the e-mail addresses identified in Exhibit A hereto that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Marcella D. Slay
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
mslay@gbc.law

*Attorneys for Deckers Outdoor Corporation*